McIlvaine, J.
The claim of the plaintiffs below was, that Mrs. Gunning died seized of an equitable fee in remainder to the forty, and five and a half acres of land, which vested in her husband upon her death, and thus became subject to the payment of his debts.
It is not disputed, that if Mrs. Gunning died possessed of any estate in the forty, and five and a half acre tracts, the same, being non-ancestral property, passed to and vested in the husband absolutely at her death. Nor is it disputed, on the other hand, that if she died seized of any beneficial interest in the one hundred aud thirty-two and a half acre tract, that it, being an ancestral estate, passed to and vested in her brother and sister upon her death, subject, however, to the life estate of her husband.
It is a conceded fact, that prior to the 5th day of April, 1870, Mrs. Gunning was seized as of an estate in fee simple of the one hundred and thirty-two and a half acre tract, and had no interest, legal or equitable, in the forty, and five and a half acre tracts. The question, then, is, how *597 were her relations to these several parcels of land affected by the written agreement .entered into on that day for an exchange? There can be but one answer to this question, namely: That, by reason of her coverture, the agreement, as to her, was absolutely void. In respect to such agreements, as the one under consideration, the disability of a married woman has in nowise been removed by our legislation. The contract being void, she did not thereby part with any interest in the one hundred and thirty-two and a half acre tract, or acquire any in the forty, and five and a half acre tracts. Nor did the possession taken by her brother, Patrick Murdock, at all affect her estate in the one hundred and thirty-two and a half acres, either in law or in equity; so that, at her death, the title to this tract of land passed to and vested in her brother and sister, subject to the life estate of her husband; and the brother and sister, as heirs of Mrs. Gunning, were no more obligated by this agreement than ■was Mrs. Gunning in her life-time. This possession, being without right, was subject to be determined at the will of Mrs. Gunning, or her heirs after her death.
Nor do we find anything in the record, occurring after the death of Mrs. Gunning, which has vested in Owen T. Gunning any interest in the forty, and five and a half acre tracts. The proceeding in the probate court had no relation to these parcels, and as to the one hundred and thirty-two and a half acre tract, the action of the court, as well as the action of the administrator under its orders, were wholly ineffectual to transfer the title, for the want of jurisdiction in the court to entertain the proceeding. That court, no doubt, assumed jurisdiction under section 5 of the act of June 1, 1831, entitled “ an act to provide for the execution of real contracts in certain cases ” (Swan & Critchfield, 260), in connection with section 3 of the Probate Court Act (Swan & Critchfield, 1213). The subject matter of the proceeding authorized by these statutes is a “ contract in writing,” which implies that it must be entered into by a person capable of binding him or herself by contract, and does not embrace an agreement, although in writing, of *598 one whose agreement is void for want of capacity to contract.
We think the question arising here is one of jurisdiction, and not of mere irregularity; but, were it otherwise, the proceeding is intended to operate alone upon the legal title, and, if the jurisdiction of the court were conceded, it appears in this ease that the legal title to the one hundred and thirty-two and a half acres was not transferred, at all, as the deed which the administrator of Mrs. Gunning assumed to execute, under the order of the probate court, was not attested by two witnesses, as the statute in such case made and provided requires.
Inasmuch, therefore, as the heirs of Mrs. Gunning are not estopped from claiming the one hundred and thirty-two and a half acres, either by the record or the deed, neither are they estopped in equity by matter in pais ; for the simple reason that whatever acts have been done by them in respect to her estate or her supposed contract for the exchange of lands, the same were done under a mutual mistake as to their rights ; and as the creditors of Owen T. Gunning have not in any wise been prejudiced thereby, equity can find no footing for the enforcement of an estoppel.
And, again, it is quite clear that the creditors of Gunning may not claim an equity as against Murdock, which Gunning himself could not enforce. Now, as between Murdock and Gunning, it would seem clear enough that the former, not having performed the contract on his part, could not enforce performance on the part of the latter; and it would also seem that if performance on the part of Murdock were tendered, still, on the grounds of public policy, equity would not compel specific performance of a husband’s contract for the conveyance of his wife’s land, even to the extent of his own interest therein. Slater v. New, 49 Miss. 307 ; Young v. Paul, 2 Stock. Oh. 402 ; Clark v. Reins, 12 Grattan, 98; Evans v. Kingsbury, 2 Randolph, 120; Watts v. Kinney, 3 Leigh, 272 ; 3 Lead. Cases in Eq. 90. But however that may be, Gunning has not per *599 formed the contract on his part. The title to the one hundred and thirty-two and a half acres has not been conveyed to Murdock, or tendered — not even to the extent of Gunning’s life estate ; and the legal or equitable estate to the remainder is not in him or under his control. lie could not, if he were willing, perform the agréement of himself and wife to Murdock. And, surely, in this state of the case, Gunning would have no standing in equity against Murdock to enforce the conveyance of the forty, and the five and a half acres to him. And if not, his creditors have not.
Judgment reversed, and cause remanded to the district court for such further proceedings as may be authorized.